JEREMY DEVONTA WILLIAMS,

        Plaintiff,

        v.                       Case No. 16-CV-15

TRAVIS P. BRADY, DARYL BONES,
WILLIE FREEMAN, AND OLIN MIKELL,

        Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 23) AND DISMISSING CASE

The *pro se* plaintiff, Jeremy Devonta Williams, is a Wisconsin state prisoner. He filed this lawsuit under 42 U.S.C. § 1983 alleging that defendant Officer Willie Freeman poisoned his food and that defendants Nurse Travis Brady, Sergeant Daryl Bones, and Lieutenant Olin Mikell were deliberately indifferent to his serious medical needs after the alleged food poisoning. Defendants' motion for summary judgment is ready for resolution and is addressed below.

### FACTUAL BACKGROUND[1]

Plaintiff was confined at the Racine Correctional Institution (Racine), a medium-security institution located in Sturtevant, Wisconsin, at all times material to this action. Defendants are all employed by the Wisconsin Department of Corrections (DOC) and work at Racine. Travis Brady is a nurse clinician, Olin Mikell is a supervising officer 1

---

[1]This section is taken from Defendants' Proposed Findings of Fact. Plaintiff did not file a response to defendants' proposed facts and, therefore, they are undisputed for the purpose of summary judgment. *See* Fed. R. Civ. P. 56(c), (e); Civil L.R. 56(b)(2), (b)(4) (E.D. Wis.).

(lieutenant), Daryl Bones is a correctional sergeant, and Willie Freeman is a correctional officer.

On September 16, 2015, Officer Freeman passed out lunch trays to the inmates in the restrictive housing unit at Racine. At about 11:30 a.m., plaintiff hit the emergency call button and told Sergeant Bones that he had stomach pains and wanted Bones to call the health services unit. Sergeant Bones called the health services unit, and a staff member there said that Nurse Brady would be notified. About twenty minutes later, Officer Freeman was at plaintiff's cell front and saw that he was breathing but not responding. Officer Freeman reported plaintiff's status to Sergeant Bones, who called the health services unit again and requested Lieutenant Mikell to report to the unit. A minute later Lieutenant Mikell came to the unit. Lieutenant Mikell, Officer Freeman, and Correctional Officer Coca entered plaintiff's cell where Lieutenant Mikell directed Sergeant Bones to call the health services unit again. Nurse Brady arrived at the unit to assess plaintiff within seven minutes of being informed that plaintiff was unconscious but still breathing.

He examined plaintiff and found that plaintiff's vital signs and blood sugar were normal, his skin was warm and dry, his heart rhythm was normal, and his lungs were clear. Nurse Brady tried to open plaintiff's eyes to test his pupil response and observed he was squeezing his eyes shut. To Nurse Brady, this was an indication that plaintiff was conscious and was deliberately attempting to appear unconscious. Nurse Brady used smelling salts to help determine whether plaintiff was indeed unconscious and, if he was, to help him regain consciousness because using ammonia inhalants or "smelling salts" can help restore consciousness and mental alertness. Smelling salts are also a good tool for determining whether a patient is actually unconscious. When Nurse Brady used the

2

smelling salts, plaintiff turned his head immediately and held his breath. During the assessment, Nurse Brady did not observe any injuries to plaintiff.

Sergeant Bones completed an incident report respecting the matter on September 16, 2015. Plaintiff told Sergeant Bones that he felt drugged or poisoned, that he wanted his food tray tested in addition to a urinalysis and blood test. Afterward, Sergeant Bones contacted Lieutenant Mikell about plaintiff's requests. Pursuant to Lieutenant Mikell's directive, Sergeant Bones emailed the officer in charge of urinalysis and asked that the test be performed for plaintiff. Lieutenant Mikell also asked Sergeant Bones to advise plaintiff to send a request for the blood test to the health services unit.

Lieutenant Mikell received four requests from plaintiff to test the food from his food tray. Lieutenant Mikell explained to plaintiff that his food would not be tested because the institution did not conduct food tests and because he did not know where to send the food for poison testing outside of the institution.

Health services unit staff saw plaintiff during the health and psychological rounds on September 18, 21, and 23, 2015. During these visits, plaintiff did not display any signs of injury or illness.

On September 24, 2015, plaintiff saw Nurse Tremaine Jackson for complaints of headaches. Plaintiff told Nurse Jackson that his headache had not affected his activities of daily living and that he had still been able to participate in recreation activities such as pushups. Upon examination, plaintiff's speech was clear, he was calm and he had an appropriate gait, with a steady pace within normal limits. His pupils were equally round and reactive to light. Moreover, plaintiff's bilateral hand grasps were strong and equal. Also, plaintiff moved his extremities without any weakness and displayed full head and neck

3

range of motion. Based on the examination, Nurse Jackson diagnosed plaintiff with an "alteration in comfort," and instructed him to use cool or warm compresses for comfort as well as relaxation techniques. Nurse Jackson dispensed acetaminophen to plaintiff and instructed him to maintain his hydration and to limit his salt/caffeine intake.

On September 28, 2015 and October 1, 5, 9, 12, 14, 16, 19, 21, 23, 26, and 28, 2015, health services unit staff saw plaintiff during health and psychological services rounds. On these dates, plaintiff did not report any complaints, had no signs of injury or illness, and did not express any mental health concerns.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

4

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

DISCUSSION

A. Food Poisoning Claim Against Officer Freeman

Defendants contend that plaintiff's claim against Officer Freeman should be dismissed because plaintiff was not subjected to conditions of confinement that violate contemporary standards of decency and because Freeman was not deliberately indifferent. In response, plaintiff acknowledges that he was not subjected to conditions of confinement that violate contemporary standards of decency. But he states that Officer Freeman served him a poisoned food tray that made him fall and hit his head, and the manner in which defendants handled the situation was deliberately indifferent.

A valid claim of deliberate indifference under the Eighth Amendment has objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To state a claim an inmate must first allege that he suffered a deprivation sufficiently serious to have denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Farmer*, 511 U.S. at 834; *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Second, the inmate must allege that the defendants were subjectively aware that their conduct was creating a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 837; *Roe*, 631 F.3d at 857.

5

Under the Eighth Amendment, a prisoner's diet must provide adequate nutrition, *see Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996), and allegations of food contamination by a guard states an Eighth Amendment claim, *see Robles v. Coughlin*, 725 F.2d 12, 16 (2d Cir. 1983), *see also Murphy v. Wheaton*, 381 F. Supp. 1252, 1261 (N.D. Ill. 1974) (spoiled, rotten, and foul food served in unclean wagon used to dispose of garbage). However, prison officials cannot be held liable under the Eighth Amendment unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not. *See Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (citing *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008)).

In this case, plaintiff has not submitted evidence supporting his allegations that Officer Freeman served him poisoned or contaminated food on September 16, 2015. Rather, the undisputed facts show that prepared meal trays arrived on the unit covered, and that Officer Freeman simply passed out the trays to inmates. He did not prepare the food trays. Once Officer Freeman became aware of plaintiff's complaints that he was not feeling well, he contacted staff members for assistance. Simply put, the record does not support a finding that Officer Freeman poisoned plaintiff or that he acted with deliberate indifference. Thus, Officer Freeman is subject to dismissal.

B.    Medical Care Claims Against Nurse Brady, Sergeant Bones, and Lieutenant Mikell

Defendants further contend that plaintiff's Eighth Amendment medical care claims must be dismissed because he did not suffer from an objectively serious medical need and because they were not deliberately indifferent to plaintiff's medical needs. In response, plaintiff maintains that it is "obvious" that he had a serious medical need because he was

6

unresponsive and was on the floor when Officer Freeman came to his cell. According to plaintiff, Sergeant Bones was deliberately indifferent because he told plaintiff that Lieutenant Mikell said that he was going to send plaintiff's tray out to be tested. Likewise, Lieutenant Mikell was deliberately indifferent because he told plaintiff that he would send the tray out to be tested but failed to do so, resulting in staff not knowing what to do with plaintiff's health and safety. Plaintiff also asserts that Nurse Brady was deliberately indifferent inasmuch as he did not arrive to examine plaintiff, who was unconscious, until after three calls. According to plaintiff, Nurse Brady used smelling salts to help him regain consciousness, and left him on the floor because he (Nurse Brady) thought plaintiff was "playing." Lastly, plaintiff contends that Nurse Brady showed deliberate indifference on September 17, 2015, by returning plaintiff's health slip stating that plaintiff was scheduled to be seen in the health services unit, that blood work would be ordered by the doctor at plaintiff's next appointment, and that plaintiff was never called for that appointment.

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (quoting *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009); *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. *Arnett*, 658 F.3d at 750 (citing *Estelle*, 429 U.S. at 104). Accordingly, a claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. *Id.* at 750 (citation omitted). "[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of

7

pain forbidden by the Constitution." *Rodriguez*, 577 F.3d at 828 (quoting *Estelle*, 429 U.S. at 104).

A medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.* at 857 (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Id.* at 861 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases)). On the other hand, a prison medical staff "that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue – the sorts of ailments for which many people who are not in prison do not seek medical attention – does not by its refusal violation the Constitution." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (1997) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

To demonstrate deliberate indifference, a plaintiff must show that the defendant "acted with a sufficiently culpable state of mind," something akin to recklessness. *Arnett*, 658 F.3d at 751 (citation omitted). A prison official acts with a sufficiently culpable state of mind when he or she knows of a substantial risk of harm to an inmate and either acts

or fails to act in disregard of that risk. *Roe*, 631 F.3d at 857. "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'" *Arnett*, 658 F.3d at 751 (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). It is not medical malpractice; "the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (citation omitted).

"A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Arnett*, 658 F.3d at 751 (quoting *Duckworth*, 532 F.3d at 679). A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that "no minimally competent professional would have so responded under those circumstances." *Roe*, 631 F.3d at 857 (quotation marks omitted). However, a prisoner "need not prove that the prison officials intended, hoped for, or desired the harm that transpired." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). "Nor does a prisoner need to show that he was literally ignored." *Arnett*, 658 F.3d at 751 (citing *Greeno*, 414 F.3d at 653). That the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 751 (quoting *Greeno*, 414 F.3d at 653). However, deliberate indifference is a high standard; it requires proof that the state officials actually knew of the inmate's serious medical need and that they disregarded it. *Walker*, 293 F.3d at 1037.

9

In this case, the record does not support a finding that plaintiff had a serious medical need. When Nurse Brady arrived at plaintiff's cell, he thought plaintiff was faking his symptoms as there were no objective signs of unconsciousness and no signs of injury. Upon examination, all of plaintiff's vital signs were normal. Eight days later, plaintiff complained of a headache that did not affect his activities of daily living. Moreover, plaintiff was seen by health services unit staff multiple times after the incident and he did not show any signs of a medical issue related to poisoned or contaminated food.

Even if plaintiff had suffered due to a serious medical need, defendants did not act with deliberate indifference. With regard to Sergeant Bones, plaintiff merely contends that Bones told Lieutenant Mikell that plaintiff wanted his meal tray sent outside the correctional institution for testing. Failure to act in response to that request is not within the definition of deliberate indifference.

Plaintiff also charges that Lieutenant Mikell failed to send his meal tray out to be tested, and that Mikell does not deny this. However, it is undisputed that Lieutenant Mikell did not know of any places that could test plaintiff's food. Additionally, there is no evidence to support an inference that the failure to have plaintiff's food tray tested affected plaintiff's medical care or otherwise caused him harm. Therefore, plaintiff has not raised a genuine issue of material fact to support a finding that Lieutenant Mikell was deliberately indifferent to a serious medical need he may have had.

Turning to Nurse Brady, it is undisputed that he treated plaintiff after he reported to plaintiff's unit. He arrived on the unit within seven minutes of being informed that plaintiff was unconscious but still breathing. To the extent that plaintiff challenges this delay, he has not shown that the delay caused him any harm. *See Jackson v. Pollion*, 733 F.3d 786,

790 (7th Cir. 2013) (quoting *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm."). Likewise, plaintiff has not submitted evidence to raise an inference that the treatment he received from Nurse Brady caused him harm or was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's medical condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quotation omitted). In sum, a reasonable factfinder could not conclude that Nurse Brady acted with deliberate indifference to plaintiff's medical need.

Therefore,

IT IS ORDERED that defendants' motion for summary judgment (Docket 23) is granted and this case is dismissed.

Dated at Milwaukee, Wisconsin, this 8th day of March, 2017.

BY THE COURT

s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U.S. District Judge